I am informed that all parties are here, so I will not call the calendar. I'll turn, we have no arguments on motion, so I'll turn to the first case on the calendar, which is C.C. versus Polaris, need a napkin. Good morning, council, you may proceed. Thank you, your honor. Good morning, and may it please the court. The enhanced injury in this case, an amputation, and the cause of the amputation were largely undisputed at trial. The appellant, C.C., permanently lost her hand when it was sheared off due to the interaction between a Polaris Ranger's rollover protection system, or ROPS, R-O-P-S, and the ground after the Ranger she was rolled over 90 degrees to the driver's side. Appellant's contention, which is critical to the evidentiary issues surrounding crash worthiness, is that C.C.'s injury attributable to the design of the Ranger is completely divisible from any injury she may have sustained due to the accident itself. Appellant, we ask this court to reverse the district court's order denying her motion for a new trial for three main reasons. I don't really understand that theory at all. I have a case here where a father put his 11-year-old girl in a truck, in an off-terrain vehicle, with two friends who . . . how old were they? They were younger than she was, right? One of them was her age, 11, and another one was younger. Right. They'd had no training in this vehicle. She didn't have a driver's license. She didn't have any experience. They went out on the highway, open highway, in this vehicle, and she rolled it over. It's accurate that she rolled it over, and it's accurate that there were two other passengers in the car, but the 11-year-old girl that was driving this vehicle had driven other off-road vehicles before and was experienced using other off-road vehicles. This particular vehicle had . . . She was experienced using other off-road vehicles on highways? Well, I think the term highway somewhat mischaracterizes the types of roads that she was driving on. She wasn't driving on a highway, such as an interstate. She was driving on a gravel road that was large, and one was able to do higher speeds on that road, but she wasn't on a highway in which there were other vehicles on the road. In fact, the plaintiff here, CeCe, had been experienced driving other vehicles. The fact that her father allowed her to drive the vehicle we contend was an event that was foreseeable to the defendant here. Foreseeable that a man would let an 11-year-old girl drive a vehicle on the road? Yes, Your Honor. In fact, it's more than foreseeable. It was actually known to defendants that minors would drive these vehicles, and in this case, it was not surprising and, in fact, known to the defendant that children under the age of 16 would drive these vehicles. I'm sure that the defense lawyers told the jury that it's hard to think of behavior by a parent that's more irresponsible than what this record reveals. It's staggering to me. Taking for granted . . . I mean, it's like the father threw a girl off the roof, and the claim is that the concrete wasn't absorbent enough. She fell off. Well, I think in that example, one would have to ask whether or not a father throwing his daughter off the roof was a foreseeable event. All of this was . . . you had a . . . the trial lasted, what, eight days? Yes. And all of this was aired before the jury, right? That's correct, Your Honor. The jury didn't buy any of it, and so what your brief neglects to do is to . . . consistently neglects to do is give the required deference to the jury's analysis of the evidence. The jury analyzed the evidence. It's our contention that the jury was inundated with voluminous, irrelevant evidence. Over the course of an eight-day jury trial, the jury was inundated with evidence concerning the cause of the accidents, the alleged negligence of the plaintiff's father, and I think the jury's reaction was probably something similar . . . Well, weren't they entitled to know that? No, Your Honor. It's our contention that they were not entitled to know that because the theory upon which this case was brought was a design defect for which the defendant should have taken some precaution. I mean, I can see how you would much prefer that the jury wasn't advised as to what went on, but there's no reasonable argument in your brief that I can see why the judge abused his discretion in letting this evidence in. I mean, the jury was entitled to a factual predicate for the determination they were ultimately asked to make, it seems to me. I appreciate that, Your Honor. It's our contention that it was an abuse of discretion to allow all this evidence in, and what it did was have the effect of prejudice to jury, so that the jury was not able . . . Are you saying intervening cause is irrelevant in this case? No, Your Honor. It's not that an intervening cause . . . But, if it's relevant, then what was wrong with putting in evidence of an intervening cause? So, the intervening cause issue is a somewhat separate issue. We contend that the intervening cause instruction to the jury was an error, due to the fact that not only were the actions of plaintiff's father foreseeable, but they were actually known to the defendant at the time. I'm dealing with your point that you said so much evidence came in about that. But, if the issue is relevant, what's wrong with so much evidence coming in on a relevant issue? Well, perhaps I misunderstood. I did not believe, and it's our contention, that that evidence was not relevant. The evidence involving accident reconstruction, whether plaintiff was driving too fast, over-corrected, over-steered, the type of road she was on, all of that has nothing to do with the actual claim that was brought, which was a strict liability and negligent design . . . That's why I started asking you, do you say that's irrelevant? And, you said, no, it's relevant. To the extent that a proper intervening causation would be relevant in the abstract. The intervening cause defense that was asserted here was that plaintiff's father allowed her to drive the vehicle and that she was underage. That was an event that was not actually an intervening cause under the law, because it was a foreseeable and, in fact, known event. I have a different question about the charge. The charge given by the judge seems to indicate that the intervening cause was based on a design defect. And, I don't think you ever argued that. In fact, in opposing counsel's brief, he wonders why the design defect came up in this context. Could you explain that? The design defect was not an aspect of the intervening cause charge. So, the charge is just wrong? I'm not certain to what you're referring, but . . . Let me read it to you. If you also find that a reasonably prudent person in defendant's situation before selling the Ranger would have foreseen that an act of the kind committed by Mr. Camerata would be a probable consequence of the Ranger's design . . . . . . should not have been provided to the jury. Now, whether those were tied to the design defect claim, that is not the case. That was not an assertion made, to my recollection, by the defendant and certainly one that is in error. Why was it foreseeable that a manufacturer of a vehicle that's made for loading . . . I mean, that's made for transporting materials, would be entrusted by a father to an unlicensed child? I appear to be out of time, but if I could answer that question. It's foreseeable because it was actually known. It was known that fathers let their children drive vehicles like this. Because the vehicle is marketed as a work vehicle, doesn't mean that it doesn't have other applications. And, in fact, it was known that vehicles of these types are used for recreation, hunting, fishing, as well as transport and construction. Yeah, but that . . . that takes care of only part of the question. Here we've got a father letting his little child drive. I've never heard of anything like that. How is that foreseeable? It was foreseeable because it had occurred many times in the past and the defendant was aware of it occurring. The record shows that . . . This is . . . . . . children repeatedly drive vehicles like this on the . . . The record shows . . . . . . on highways. The record shows that at appendix pages . . . I could pull those. The record shows that the defendant's corporate representative testified that he was aware that children drove these vehicles regularly. That parents, by necessity, allowed their children to drive these vehicles. These vehicles are used in rural areas. Did you make those arguments to the jury? Yes, Your Honor, we did. Okay, and they didn't buy it, apparently. Apparently. Thank you. You've reserved two minutes for rebuttal. Yes. Thank you, Your Honors. We'll hear from Polaris. May it please the Court. Good morning, Your Honors. Polaris is, of course, sympathetic to the serious injuries that CeCe suffered in this accident. But the jury here concluded that those injuries were not the result of any product defect or any negligence on the part of Polaris. How sympathetic you are, did you offer any settlement? I beg your pardon? I said you were sympathetic. Did you offer any settlement? That's not in the record, Your Honor. I know. That's why I'm asking you here. I was not personally involved in any settlement negotiations, so I can't answer that. There's a limit to your sympathy. Your Honor, Polaris stands behind its products and their safety. And we believe that when a case is brought in which Polaris is blamed for something that it is not responsible for, it has a right to defend itself. And that's what happened here. Fair enough. And you don't believe that you should cut checks or give away money to make people feel good when you have not done anything? That's correct, Your Honor. Your Honor, plaintiff's argument here, the primary argument, the crashworthiness argument, ignores two primary problems. As the Court is aware, and as the Court has even commented this morning, in a motion for a new trial, the Court is required to view the evidence in the light most favorable to the nonmoving party, that is, Polaris. Here, Polaris presented evidence at trial on design defect and on causation. On design defect, Polaris presented expert testimony that the design of the Ranger and the ROPS system was adequate and safe, and, in fact, that the alternative that plaintiff's expert provided would be more dangerous and less useful than the existing design. Polaris. Why doesn't the design speak for itself? If this young child's hand was caught between the ROPS and the bar, or why doesn't it speak for itself that it wasn't safe? Well, that gets to my second point. Your Honor, we also presented evidence at trial that the component of the Ranger that actually came into contact with C.C.'s hand was not the ROPS at all. It was the B-pillar, which is the vertical pillar that's immediately behind the driver's left shoulder. And there's no claim that the B-pillar was defectively designed. Our expert testified that when the Ranger tipped over, C.C.'s hand was caught between the B-pillar and the ground, and that's what caused her injuries. The jury was entitled to credit that testimony and to believe that the ROPS system had nothing to do with actually causing the injuries that the plaintiff suffered. So between the evidence that the design of the product was, in fact, not defective, and the evidence that the ROPS system that was claimed to be defective was not, in fact, the mechanism that caused plaintiff's injuries, that's two strikes right there against any claim that there was any error in terms of the crash-worthiness argument. The plaintiff tries to salvage that by bringing in the issue of comparative fault and saying that all the evidence concerning C.C.'s own conduct and her father's conduct were irrelevant and were improperly admitted, and that the jury was improperly instructed on comparative fault and on intervening cause. That ignores the fact that it was, in fact, disputed at trial whether the design was defective and whether the ROPS system had any active role in causing the injury at all. Plaintiff's argument, and she puts it this way in her brief, she says that she's assuming that the ROPS system caused her injury. She says it was undisputed at trial, when, in fact, it was disputed at trial. We presented evidence that the ROPS system had nothing to do with causing the injury. The plaintiff presented evidence that it did. The jury had the chance to make its decision, and it did so, and it decided in favor of Polaris. Nothing about that is improper. Nothing about the submission of comparative fault was improper. Indeed, the jury didn't even get to the comparative fault question. Because it found that, it found for Polaris on design defect, on negligent design, and on failure to warn, per the court's instructions, it didn't reach the comparative fault question at all. So there couldn't possibly have been any error, and any error, if it had occurred, could not have possibly affected the verdict because the jury never reached the question of comparative fault. Did you hear the questions I asked the opposing counsel about the intervening cause and the design defect, and how they were related? I didn't understand how they were related. Did you ask for that particular charge that said that a reasonably prudent person in defendant situation before selling the range, it would have foreseen that an act of the kind committed by Mr. Camerata would be a probable consequence of the ranger design? I don't understand what that has to do with design. Did you ask for that charge? The form of the charge was from the New York standard matter charge. PJI. Yes. It was from PJI. But did you specifically request it? And could you explain to me what it means? Your Honor, the parties did not, as I recall, dispute the form of the supervening, excuse me, the interview. I know, but I'm asking for your understanding of what it means that the intervening cause would have been foreseen would be a probable consequence of the ranger design. That second sentence probably was not necessary, as we note in footnote four. You say in your brief that you didn't understand why it was there. It probably wasn't necessary. Did it mislead the jury? I don't see how it could have because the . . . Well, the jury would have been unable to figure out. If I can't figure out what it means, how could the jury have been able to figure out what it means? The important thing was the sentence that precedes the sentence that Your Honor read, which says, if you find that the ranger was defective in design, but the plaintiff's injuries were caused by the act of Mr. Camerata, you may still find . . . I beg your pardon. I'm mistaken there. It's the first sentence. Right, I know, but we don't give them a sentence. We give them the whole charge. I don't know how they could have figured out what that means. Didn't that therefore mislead the jury? I submit that it didn't because it went to the issue . . . Even if you assume that the jury could have been confused by that, it wouldn't have prejudiced or affected the verdict because the evidence of lack of design defect and lack of a connection between the ROPS and the injury were both there and were both entitled to be construed in Polaris's favor. There was no objection to the charge? There was no objection to the form of the charge. The plaintiff objected to the charge being given at all, yes. Not the language? Not the language, no, Your Honor. Your Honor, I'm happy to talk about either the evidentiary issues if the court would like. If not, then if the court has no further questions, I would cede back the remainder of my time. Thank you. Thank you. Thank you, Your Honor. Mr. Friedman, you have two minutes for rebuttal. Thank you, Your Honor. I'll just respond briefly. The issue of this jury instruction did, we contend, mislead the jury, not only for the confusing language, which was objected to in toto, but importantly because the instruction there negated the causation element of our claims, of the strict liability and negligence claims, because to the extent the jury believed that the plaintiff's father's permission to his daughter to allow her to drive the vehicle was so abnormal and so aberrant as to be unforeseeable, the jury found no causation. And so to Apolli's claim, our statement just a moment ago that such an instruction did not mislead the jury because the jury found that there was no design defect. What specifically did you say in your objection to that charge? During trial, we objected to that charge because it should not have been there at all. What specifically did you say? I do not recall specifically arguing that that second clause or second sentence was inartful or that that second sentence in isolation misled the jury, but we argued that because plaintiff's father's provision of the vehicle to his daughter was a foreseeable event, the charge should not have been provided at all. Would you concede that once the jury found that there was no design defect and that the jury believed that the accident didn't happen in the way you proffered to them, end of case? No, I wouldn't, Your Honor. Why? Because for the jury to find that there was no design defect, they could have credited the intervening cause of plaintiff's father to decide that there was no defect. Sorry? Had the jury credited defense's intervening cause theory, they would have found no defect. I don't follow that. What intervening cause would have negated the existence of a design defect? Defendant's argument that plaintiff's father was an intervening cause eliminated the causation element for our claims. Had the jury found that plaintiff's father was legally an intervening cause, they would have checked no, that there was no design defect, and no, that there was no negligent design, which is what they did. And, of course, we don't know exactly why the jury determined that, but it's our contention that that instruction could have been the reason, and because that instruction was improper, plaintiff's motion for a new trial should be granted. I don't follow that. You're saying if they found the father was an intervening cause, that means there's no design defect? Is that what you said? The way that the instructions are written, it provides that if the jury credits the father's intervening cause and, therefore, finds that plaintiff hasn't proved its causation, then they would find against plaintiff on its two claims, strict liability and negligent design, and that's what they did. But that doesn't mean there isn't a design defect. I thought that's what you just said. Plaintiff's design defect allegations had to do both with the ROPS being non-recessed but also had to do with the lack of a net. There was a partial net that defendants provided on their vehicle. The net, plaintiff's contended, had it been a full net, would have prevented C.C.'s arm from... But there was a question, is there a design defect? That's correct. How'd they answer that? Well, in fact, there was not that question, in my recollection. There was not that specific question. There was not the question, was there a design defect in the Polaris Ranger? The question was, did plaintiff's prove its case that there was a design defect? One element of that was causation, and that element was negated by the improper intervening and superseding charge. Why? The two are mutually exclusive. You couldn't... It is possible, and plaintiff's contend likely, that the jury looked at plaintiff's father's actions, said, had the reaction that I think many in this room are having, that how could a father have allowed his daughter to do this, even though it was known that children of this age drive vehicles of this type? How could he have done that? He was so irresponsible and reckless that we find against plaintiff in this situation. Counsel, if I agree with you that the instruction was confusing to the jury, did you object to it at the time it was given? We objected to the instruction completely. I couldn't find that in the record. Would you point me where? You don't have to do it now. Would you send me the place where you, within three days, with an opportunity to the other side to comment where you objected to the charge because it was confusing? Your Honor, we objected to the charge due to the fact that the intervening superseding charge should not have been given completely. Maybe I was confusing. We did not object specifically to the, on the argument or on the basis that it was misleading, that that aspect was misleading that Your Honor pointed out. We did not object to that. We did not make that objection. That is correct. When did you make this generalized objection? During trial at the charge conference. And did you preserve the objection after the judge gave the charge? I believe so, Your Honor, yes. All right, thank you very much. Thank you very much. Thank you very much. We'll reserve decision.